UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES BRIGGS, | CIVIL ACTION NO. |
| | |
| | March 5, 2012 |
| Plaintiff, | |
| Individually and on behalf of all other persons similarly situated, | CLASS ACTION |
| | |
| v. | |
| | |
| RODERICK BREMBY, in his official capacity as Commissioner of the State of Connecticut Department of Social Services, | |
| | |
| Defendant. | |

## COMPLAINT

### I. PRELIMINARY STATEMENT

1. The named plaintiff and all others similarly situated are indigent individuals who are seeking desperately needed benefits from the Supplemental Nutrition Assistance Program (SNAP), commonly known as food stamps, from the Connecticut Department of Social Services ("DSS" or "the Department"). The ongoing and persistent failure or refusal of the defendant DSS Commissioner to ensure the processing of food stamp applications in a timely manner, on a statewide basis, has resulted and continues to result in the ongoing denial of food stamp benefits to thousands of households critically in need of this assistance to help them feed their families. Without prompt access to food stamps as mandated by federal law, these individuals face hunger and serious health risks.

1

2. Accordingly, plaintiff brings this action on behalf of himself and all others similarly situated, to challenge the defendant's policies and practices of failing or refusing to process food stamp applications and provide food stamps on a timely basis to eligible applicants, in violation of Congressionally enacted food stamp statutes and federal regulations promulgated pursuant to those statutes by the federal Food and Nutrition Service (FNS) of the U.S. Department of Agriculture.

3. Plaintiff seeks declaratory, as well as preliminary and permanent injunctive relief to enjoin the defendant, in his official capacity as DSS Commissioner, from failing or refusing to process applications for food stamps and to provide these benefits on a timely basis.

## II. JURISDICTION

4. The Court's subject matter jurisdiction over this action is conferred by 28 U.S.C. § 1331.

5. Declaratory relief is authorized by 28 U.S.C. §§ 2201(a) and 2202, and by Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure.

6. This action is brought pursuant to 42 U.S.C. § 1983 to redress deprivations of the plaintiffs' federal statutory and regulatory rights.

## III. PARTIES

7. Plaintiff JAMES BRIGGS resides in Connecticut.

8. Defendant RODERICK BREMBY is Commissioner of the Department of Social Services (DSS) of the State of Connecticut. In his official capacity as DSS Commissioner, Defendant Bremby is responsible for, *inter alia*, the statewide operation and administration of the Connecticut Food Stamp Program, in compliance with the federal Food Stamp Program. Conn. Gen. Stat. § 17b-2(9).

## IV. CLASS ACTION ALLEGATIONS

9. Plaintiff is an impoverished person seeking food stamps who sues on behalf of himself and all others similarly situated, pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

10. The plaintiff brings this action on behalf of himself and on behalf of a class defined as follows:

> All Connecticut residents who, since March 5, 2009 have applied, are applying, or will apply for food stamps from the Connecticut Department of Social Services.

11. The plaintiff class is so numerous that joinder is impracticable. Precise numbers regarding those adversely affected by the defendant's failure or refusal to comply with federal law by processing food stamp applications and providing food stamp benefits on a timely basis are in the possession and control of DSS, which also has possession and control of records for plaintiffs and all those similarly situated. Available data regarding numerosity of the class demonstrates the following:

a. In a February 22, 2011 joint presentation by DSS and FNS to the Connecticut General Assembly, DSS reported a six-month average of 16,041 food stamp applications per month.

b. As more fully referenced in Paragraph 28 of this Complaint, DSS has failed or refused to timely process the food stamp applications of thousands of individuals, resulting in class members suffering delays in the receipt of their benefits.

12. There are questions of law and fact common to the proposed class, including whether defendant continues to fail or refuse to process plaintiffs' food stamp applications and provide food stamps to them on a timely basis, in violation of federal Food Stamp Act statutes and implementing regulations promulgated by FNS.

13. The named plaintiff's claims are typical of the claims of the plaintiff class. The named plaintiff and members of the class have applied for food stamps and have experienced unlawful delays by the defendant in the processing of those benefits.

14. The named plaintiff will fairly and adequately protect the interests of the proposed plaintiff class. In supporting his individual claims, the named plaintiff will simultaneously advance the claims of absent class members.

15. Plaintiffs' counsel are experienced in complex class litigation involving public benefit programs and civil rights laws. Counsel have the resources, expertise and experience to prosecute this action on behalf of the plaintiff class.

16. Plaintiffs' claims satisfy the requirements of Rule 23(b)(2) of the Federal Rules of Civil Procedure, in that the defendant has acted on grounds generally applicable to the proposed class, thereby making appropriate final injunctive relief and declaratory relief with respect to the proposed class as a whole.

## V. STATUTORY AND REGULATORY SCHEME

### A. Food Stamp Program Purpose and Administration

17. Congress established the federally funded, state-administered Food Stamp Program in 1964, to "safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." Pub. L. No. 88-525, § 2, 78 Stat. 703 (codified at 7 U.S.C. § 2011). In order to "alleviate . . . hunger and malnutrition," Congress enacted the Food Stamp Program to "permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation." *Id.*; 7 C.F.R. § 271.1.

18. Effective October 1, 2008, the federal Food Stamp Program was renamed the

4

Supplemental Nutrition Assistance Program (SNAP) and the federal Food Stamp Act was renamed the Food and Nutrition Act of 2008. Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, §§ 4001 and 4002, 122 Stat. 1651, 1853-1860.

19. In Connecticut, Supplemental Nutrition Assistance Program benefits are commonly known as food stamps.

20. The federal government provides complete funding to the states for all benefits under the Food Stamp Program, and at least 50% of the states' administrative costs involved in their operation of the program. 7 U.S.C. §§ 2013(a), 2019, 2025(a); 7 C.F.R. §§ 277.1(b), 277.4.

21. Each state must designate a single state agency responsible for administering the Food Stamp Program and complying with federal food stamp statutory and regulatory requirements. 7 U.S.C. § 2020(a), (d), and (e); 7 C.F.R. §§ 271.4(a), 277.4. The state agency's responsibilities include the certification of eligible applicant households and the issuance of food stamp benefits to those households. 7 U.S.C. § 2020(a)(1), (e).

22. Connecticut participates in the Food Stamp Program. The Department of Social Services is the single state agency responsible for administering the Food Stamp Program in Connecticut, in compliance with federal statutes and implementing FNS regulations. Conn. Gen. Stat. § 17b-2(9).

## B. Food Stamp Program Requirements Regarding Application Processing Timeliness

23. To be eligible for food stamps, households' net income, after specified allowable exclusions and deductions, must be below the federal poverty line. In the case of certain households that do not include an elderly or disabled member, the net income, after specified allowable exclusions but before specified allowable deductions, must not exceed the poverty line by more than 30 percent. 7 U.S.C. § 2014(c). Under Connecticut's categorical eligibility

5

program there is no asset limit for SNAP participants. *See* 7 C.F.R. 273.8(e)(17).

24. The Food Stamp Act and implementing FNS regulations require DSS, as administered by the defendant, to process food stamp applications on a timely basis. DSS must provide food stamps to eligible applicants no later than 30 calendar days after date of application. 7 U.S.C. § 2020(e)(3); 7 C.F.R. §§ 273.2(a), (g)(1).

25. Expedited issuance of food stamps is available to the following households in immediate need: (a) those with very low gross income and liquid resources (less than $150 per month and no more than $100, respectively); (b) those with combined gross income and liquid resources that are less than the monthly household rent or mortgage, and utilities; and (c) those constituting destitute migrant or seasonal farmworker households. 7 U.S.C. § 2020(e)(9); 7 C.F.R. § 273.2(a)(2), (i)(1).

26. Expedited food stamps must be provided to eligible households no later than the seventh calendar day following date of application. 7 U.S.C. § 2020(e)(9)(A); 7 C.F.R. § 273.2(i)(3)(i).

27. DSS must directly facilitate the food stamp application process through a variety of statutory and regulatory mandates, including the following:

a. DSS must allow households to file an application for benefits on the same day that they first contact the local social services office in person, during office hours. 7 U.S.C. § 2020(e)(2)(B)(iii); 7 C.F.R. § 273.2(c)(1);

b. DSS is required to "encourage" households to file food stamp applications the same day they or their representatives contact the office in person or by telephone, and express "interest in obtaining food stamp assistance or express[] concerns which indicate food insecurity." 7 C.F.R. § 273.2(c)(2)(i);

c. The applications filed on the first day of contact by households seeking to apply for food stamps need only include the applicant name, address, and signature. Households need not be interviewed prior to filing their applications. 7 C.F.R. § 273.2(c)(1);

d. DSS must document the dates that applications are filed, by recording the dates of receipt at the local social services offices. The length of time the agency has to deliver food stamp benefits is calculated from the dates the applications are filed in the local social services offices designated to accept the household applications (except for certain individuals being released from public institutions). 7 C.F.R. § 273.2(c)(1);

e. DSS must give applicants, at the time of application, a "clear written statement" about necessary verification cooperation to complete the application. 7 U.S.C. § 2020(e)(3);

f. If households seek to apply jointly for cash assistance and food stamps, any delays by DSS in processing applications for cash assistance may not result in any delays in the processing of food stamp applications. 7 U.S.C. §§ 2014(b), 2020(e)(3), (i)(2); 7 C.F.R. §§ 273.2(g)(1), (j)(1)(iii). If cash applications are denied or withdrawn, applicant households cannot be required to submit new applications for food stamps. 7 U.S.C. §§ 2014(b), 2020(e)(3), (i)(2); 7 C.F.R. § 273.2(j)(1)(v);

g. DSS, as administered by the defendant, must affirmatively identify households eligible for expedited service at the time the households request assistance. For example, a receptionist, volunteer, or other employee of DSS must be responsible for screening applications as they are filed or as individuals come in to apply. 7 C.F.R. § 273.2(i)(2);

h. Required verification of eligibility is minimal for expedited processing cases. The applicant's identity must be verified, but the issuance of food stamps within the required seven days cannot be delayed solely due to lack of verification of other eligibility factors, *e.g.*,

7

household residency, income, or liquid resources. 7 C.F.R. § 273.2(i)(4)(i).

## VI. FACTUAL ALLEGATIONS

### A. Facts Common to the Class

28. The defendant has engaged in a continuing and persistent pattern of severe noncompliance with federal law requiring the processing of food stamp applications on a timely basis. The defendant's own data reporting demonstrates this, as follows:

a. Food Stamp Applications Pending Over 30 Days (data from DSS "Application Length Pending Report," DMF 8030A-DMF 80271, p. 239)

| Month | Number of food stamp cases pending at the end of the month | Number of pending cases that have been pending for over 30 days | % of total pending cases that have been pending for over 30 days |
| --- | --- | --- | --- |
| January, 2010 | 6216 | 1846 | 30% |
| February, 2010 | 6155 | 2100 | 34% |
| March, 2010 | 6121 | 1953 | 32% |
| April, 2010 | 5557 | 1576 | 28% |
| May, 2010 | 5012 | 1063 | 21% |
| June, 2010 | 4876 | 924 | 19% |
| July, 2010 | 4854 | 905 | 19% |
| August, 2010 | 5273 | 963 | 18% |
| September, 2010 | 5609 | 1087 | 19% |
| October, 2010 | 5694 | 1154 | 20% |
| November, 2010 | 5360 | 1758 | 33% |
| December, 2010 | 5405 | 1802 | 33% |
| January, 2011 | 5000 | 1675 | 34% |
| February, 2011 | 5218 | 1437 | 28% |
| March, 2011 | 4942 | 1028 | 21% |
| April, 2011 | 4590 | 931 | 20% |
| May, 2011 | 4408 | 812 | 18% |
| June, 2011 | 4428 | 889 | 20% |
| July, 2011 | 4440 | 825 | 19% |
| August, 2011 | 5026 | 1308 | 26% |
| September, 2011 | 5120 | 1488 | 29% |
| October, 2011 | 6142 | 1562 | 25% |
| November, 2011 | 5814 | 2340 | 40% |
| December, 2011 | 5396 | 1967 | 36% |

| January, 2012  | 5564 | 1996 | 36% |
| February, 2012 | 4988 | 1784 | 36% |

b. Food Stamp Application Dispositions Taking More Than 30 Days (data from "Application Length Pending Report", DMF 8030A-DMF 80271, p. 251)

| Month | Total food stamp case dispositions (grant, deny, withdraw, cancel) | Number of dispositions that took more than 30 days | % of dispositions that took more than 30 days |
|---|---|---|---|
| January, 2010 | 15,993 | 4141 | 26% |
| February, 2010 | 14,463 | 4470 | 31% |
| March, 2010 | 17,712 | 5232 | 29.5% |
| April, 2010 | 15,639 | 4580 | 29% |
| May, 2010 | 14,671 | 3768 | 26% |
| June, 2010 | 14,679 | 3885 | 26% |
| July, 2010 | 14,479 | 3412 | 23.5% |
| August, 2010 | 16,171 | 3729 | 23% |
| September, 2010 | 16,072 | 4162 | 26% |
| October, 2010 | 16,475 | 4085 | 25% |
| November, 2010 | 14,889 | 4095 | 27.5% |
| December, 2010 | 15,655 | 4007 | 25.5% |
| January, 2011 | 16,250 | 4956 | 30% |
| February, 2011 | 16,949 | 4456 | 26% |
| March, 2011 | 19,428 | 4257 | 22% |
| April, 2011 | 16,491 | 3853 | 23% |
| May, 2011 | 17,532 | 3773 | 21.5% |
| June, 2011 | 16,254 | 3740 | 23% |
| July, 2011 | 16,692 | 3432 | 20.5% |
| August, 2011 | 16,541 | 3564 | 21.5% |
| September, 2011 | 14,804 | 4226 | 28.5% |
| October, 2011 | 15,720 | 4464 | 28% |
| November, 2011 | 14,605 | 4933 | 34% |
| December, 2011 | 15,461 | 5009 | 32% |
| January, 2012 | 15,203 | 47300 | 31% |
| February, 2012 | 16,430 | 4422 | 27% |

c. Expedited Food Stamp Applications pending more than seven days (data from DSS "Food Stamp Expedited Service Report," DMF 8068B-DMF80681, page 5)

| Month | Expedited | Number of pending | Percentage of total |

|                 | applications pending at the end of the month | expedited applications that have been pending for over 7 days | pending expedited applications that have been pending for over 7 days |
|-----------------|----------------------------------------------|----------------------------------------------------------------|------------------------------------------------------------------------|
| August, 2010    | 593                                          | 433                                                            | 73%                                                                    |
| September, 2010 | 535                                          | 408                                                            | 76%                                                                    |
| October, 2010   | 561                                          | 423                                                            | 75%                                                                    |
| November, 2010  | 455                                          | 398                                                            | 87%                                                                    |
| December, 2010  | 473                                          | 413                                                            | 87%                                                                    |
| January, 2011   | 513                                          | 426                                                            | 83%                                                                    |
| February, 2011  | 511                                          | 420                                                            | 82%                                                                    |
| March, 2011     | 526                                          | 393                                                            | 75%                                                                    |
| April, 2011     | 579                                          | 458                                                            | 79%                                                                    |
| May, 2011       | 557                                          | 443                                                            | 80%                                                                    |
| June, 2011      | 531                                          | 382                                                            | 72%                                                                    |
| July, 2011      | 568                                          | 429                                                            | 76%                                                                    |
| August, 2011    | 893                                          | 757                                                            | 85%                                                                    |
| September, 2011 | 1034                                         | 947                                                            | 91.5%                                                                  |
| October, 2011   | 1190                                         | 973                                                            | 82%                                                                    |
| November, 2011  | 1154                                         | 1053                                                           | 91%                                                                    |
| December, 2011  | 1294                                         | 1224                                                           | 95%                                                                    |
| January, 2012   | 1668                                         | 1457                                                           | 87%                                                                    |
| February, 2012  | 1684                                         | 1578                                                           | 94%                                                                    |

d. Expedited Food Stamp Applications—Dispositions taking more than 7 days (data from DSS "Food Stamp Expedited Service Report," DMF8068B-DMF80681, page 5)

| Month           | Total Expedited application dispositions (grant, deny) | Number of expedited application dispositions that took more than 7 days | Percentage of expedited application dispositions that took over 7 days |
|-----------------|--------------------------------------------------------|-------------------------------------------------------------------------|-------------------------------------------------------------------------|
| August, 2010    | 5000                                                   | 1918                                                                    | 38%                                                                     |
| September, 2010 | 4895                                                   | 1914                                                                    | 39%                                                                     |
| October, 2010   | 4835                                                   | 1829                                                                    | 39%                                                                     |
| November, 2010  | 4308                                                   | 1565                                                                    | 36%                                                                     |
| December, 2010  | 4641                                                   | 1797                                                                    | 39%                                                                     |
| January, 2011   | 4864                                                   | 1908                                                                    | 39%                                                                     |
| February, 2011  | 5286                                                   | 2103                                                                    | 40%                                                                     |
| March, 2011     | 6109                                                   | 2234                                                                    | 37%                                                                     |
| April, 2011     | 5275                                                   | 1917                                                                    | 36%                                                                     |
| May, 2011       | 5803                                                   | 2117                                                                    | 36%                                                                     |
| June, 2011      | 5490                                                   | 1969                                                                    | 36%                                                                     |
| July, 2011      | 5778                                                   | 2011                                                                    | 35%                                                                     |
| August, 2011    | 6186                                                   | 2318                                                                    | 37%                                                                     |
| September, 2011 | 8327                                                   | 4290                                                                    | 51.5%                                                                   |

| October, 2011  | 8965 | 4668 | 52% |
| -------------- | ---- | ---- | --- |
| November, 2011 | 7982 | 4282 | 54% |
| December, 2011 | 8609 | 4659 | 54% |
| January, 2012  | 9004 | 4741 | 53% |
| February, 2012 | 9731 | 5086 | 52% |

29. The Department admitted its deficient performance in timely processing of food stamp applications at a February 22, 2011 presentation to the Connecticut General Assembly, where it described the agency's food stamp "timeliness rate" as follows: 2006 – 81.43%; 2007 – 82.99%; 2008 – 83.01%; 2009 – 79.11%; 2010 – 59.49%.

30. The Department has repeatedly admitted to FNS its deficiencies in timely processing of food stamp applications. For example, a DSS "Food Stamp Program Corrective Action Plan" submitted to FNS in May 2008 stated that "CT has an unacceptable rate of timeliness in application processing." Plans submitted by DSS in November 2009 and May 2010 also identified application processing timeliness as a "problem area." In February 5, 2010 correspondence to Yvette S. Jackson, Acting Regional Administrator, USDA/FNS, Northeast Region, former DSS Commissioner Michael Starkowski stated: "We understand that there is room for improvement in our timeliness . . . rates." In December 2, 2010 correspondence to James Arena-DeRosa, USDA/FNS Regional Administrator, Northeast Region, Commissioner Starkowski stated that "[w]e recognize the need to improve our performance" regarding the food stamp application timeliness rate, among other measures. He further stated: "We acknowledge that these rates are unacceptable and improving them is a top agency priority."

### B. Facts of Individual Named Plaintiffs

31. Plaintiff James Briggs applied for food stamps from DSS on January 20, 2012. Mr. Briggs had to leave his job of many years on November 11, 2011 when his car broke down and he could not afford to repair or replace it. He had to drive 26 miles to work and could no longer

get there.  He has colon cancer and by the time he applied for food stamps, medical expenses had consumed all of his savings. His sole source of income was $75 per week from the Soldiers Sailors and Marines' Fund.

32. Following submission of his application, Mr. Briggs got a request for verification from DSS dated February 9, 2012.  It asked for proof of citizenship/identity and a letter from Soldiers and Sailors who were providing him $75 per week.  The information was due back by February 19, 2012.  He faxed a copy of his birth certificate and driver's license through Bristol Community Organization on February 10, 2012.  Bristol Veteran's Affairs Office faxed a letter, regarding the four Soldiers and Sailors payments he had received from them in January and February, to DSS on February 9, 2012.   He is still awaiting a decision from DSS.

33. Mr. Briggs received a notice from DSS dated February 22, 2012 stating that his application was delayed because "We still need more verification. You should keep trying to get the verification we need."  He has not been told of any outstanding verification other than the documentation he supplied on February 9th and 10th. He tried to reach DSS at the telephone number listed on the written notice to find out what, if any, additional information was needed, but he could not get through on the phone, despite several tries, and his messages were not returned.

34.  Mr. Briggs has been using the money from the Sailor's Soldier's and Marines fund, sparingly, to eat. He has only received five payments of $75 each. He has not been able to pay for the room he is staying in, and has been asked to leave by the end of March. Given his health condition, the lack of food stamps has made it all the more difficult for him to meet his nutritional needs.

35.  Plaintiff and members of the proposed class have no adequate remedy at law and are

being irreparably injured by the defendant's actions of failing or refusing, in violation of federal law, to timely process their applications for food stamps and issue food stamps to them, despite their being eligible for these benefits.

## VII. CLAIMS FOR RELIEF

### FIRST CLAIM: Food Stamp Application Delays

36. Paragraphs 1 through 35 are incorporated by reference as if fully stated herein.

37. Defendant's ongoing and persistent policies and practices of failing or refusing to timely process food stamp applications and provide food stamp benefits to eligible households within 30 days of the date of application violate the Food Stamp Act, 7 U.S.C. § 2020(e)(3), and implementing regulations of the Food and Nutrition Service, U.S. Department of Agriculture. 7 C.F.R. § 273.2(a)(2), (g)(1). This violation of federal law is actionable pursuant to 42 U.S.C. § 1983.

### SECOND CLAIM: Expedited Food Stamp Application Delays

38 Paragraphs 1 through 35 are incorporated by reference as if fully stated herein.

39. Defendant's ongoing and persistent policies and practices of failing or refusing to timely process food stamp applications on an expedited basis and to provide expedited food stamp benefits to eligible households within seven days of the date of application violate the Food Stamp Act, 7 U.S.C. § 2020(e)(9)(A), and implementing regulations of the Food and Nutrition Service, U.S. Department of Agriculture. 7 C.F.R. § 273.2(a)(2), (i)(2), (i)(3)(i). This violation of federal law is actionable pursuant to 42 U.S.C. § 1983.

### REQUESTS FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court:

A. Assume jurisdiction of this matter;

B. Certify this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2) with respect to the proposed class identified herein;

C. Enter a declaratory judgment, in accordance with 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, declaring that the defendant's policies and practices of failing or refusing to:

> i) timely process food stamp applications and provide food stamp benefits to eligible households within 30 days of the date of application violate the Food Stamp Act, 7 U.S.C. § 2020(e)(3), and implementing regulations of the Food and Nutrition Service, U.S. Department of Agriculture, 7 C.F.R. § 273.2(a)(2), (g)(1), as cited in the First Claim for Relief herein; and
>
> ii) timely process food stamp applications on an expedited basis and to provide expedited food stamp benefits to eligible households within seven days of the date of application violate the Food Stamp Act, 7 U.S.C. § 2020(e)(9)(A), and implementing regulations of the Food and Nutrition Service, U.S. Department of Agriculture, 7 C.F.R. § 273.2(a)(2), (i)(2), (i)(3)(i), as cited in the Second claim for Relief herein;

D. Enter preliminary and permanent injunctive relief, pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, requiring defendant to:

> i) process all applications for food stamps and issue benefits to all eligible applicants statewide within the time frames mandated by the Federal Food Stamp Act and implementing regulations promulgated by the Food and Nutrition Service, U.S. Department of Agriculture; and
>
> ii) provide food stamps on an expedited basis to all eligible applicants statewide within the time frames mandated by the Federal Food Stamp Act and

14

implementing regulations promulgated by the Food and Nutrition Service, U.S. Department of Agriculture;

E. Award plaintiffs their costs and reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988; and

F. Order such other, further, or different relief as the Court may deem just and proper.

DATE: 3/5/12

Respectfully submitted,

*[signature]*

Lucy Potter (ct23449), lpotter@ghla.org
Greg Bass (ct18114), gbass@ghla.org
Cecil Thomas (ct27264), cthomas@ghla.org
Greater Hartford Legal Aid
999 Asylum Ave., 3rd Floor
Hartford, CT 06105-2465
860.541.5000 (tel.)
860.541.5050 (fax)

Mary R. Mannix, mannix@nclej.org
Marc Cohan, cohan@nclej.org
National Center for Law and
    Economic Justice
275 Seventh Avenue, Suite 1506
New York, NY 10001
212.633.6967 (tel.)
212.633.6371 (fax)

Attorneys for Plaintiffs