UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAMES BRIGGS,                                      :
     Plaintiff,                                 :
     Individually and on behalf of all          :
     other persons similarly situated,          :
                                  :      CIVIL ACTION NO.
     v.                                         :      3:12-cv-00324 (VLB)
                                    :
RODERICK BREMBY, in his official capacity :
as Commissioner of the State of            :
Connecticut Department of Social Services, :      March 24, 2014
     Defendant.                                 :


ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
ALTER AND AMEND AND MOTION FOR RECONSIDERATION [DKT. 84]


I.      **Introduction**

      The Plaintiff brought this action on behalf of himself and all other persons

similarly situated against the Defendant, in his official capacity as the

Commissioner of the Department of Social Services, for failing to provide timely

benefits in violation of the Food and Nutrition Act of 2008, formerly known as the

Food Stamp Act, 7 U.S.C. § 2020 ("FSA").[1]  The Court granted the Plaintiff's

motion for a preliminary injunction pursuant to Fed. R. Civ. P. 65, thereby

enjoining the Defendant from failing or refusing to process timely all applications

for food stamps and to provide food stamps on a timely basis to all eligible

households and individuals.  [Dkt. 83].  After issuing the injunction, the Defendant

---

[1] The Court notes that this statute was amended by the Agriculture Act of 2014, PL 113-79, 128 Stat. 649 (Feb. 7, 2014).  However, for purposes of this decision, references to the prior statute will be used as they correspond to the Preliminary Injunction Order at issue here and the relevant statutory provisions were not amended by the Agriculture Act of 2014 in any pertinent manner.

filed this motion to alter and amend that order pursuant to Fed. R. Civ. P. 59(e) or to reconsider the order pursuant to Local Rule 7(c).  For the following reasons, the Defendant's motion is GRANTED IN PART and DENIED IN PART.

## II.   Legal Standard

"A motion to alter or amend a judgment under Rule 59 is decided under the same standard as a motion for reconsideration pursuant to Rule 59."  *Country Club Assocs. v. Shaw's Supermarkets, Inc.*, 643 F. Supp. 2d 243, 245 (D. Conn. 2009) (citing *Ass'n for Retarded Citizens of Conn., Inc. v. Thorne*, 68 F.3d 547, 553 (2d Cir. 1995)).  The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995).  "A motion for reconsideration is justified only where the defendant identifies an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Ayazi v. United Fed'n of Teachers Local 2,* 487 F. App'x 680, 681 (2d Cir. 2012) (internal citation and quotation marks omitted); *Ensign Yachts, Inc. v. Arrigoni,* No. 3:09cv209(VLB), 2010 WL 2976927, at *1 (D. Conn. July 23, 2010) (same).  A "motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."  *Shrader,* 70 F.3d at 257.  Similarly, a "motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision is made."  *Lopez v. Smiley*, 375 F. Supp. 2d 19, 21-22 (D. Conn.

2005) (citations and internal quotation marks omitted).  Further, Local Rule of Civil Procedure 7(c) requires parties seeking reconsideration to "set[ ] forth concisely the matters or controlling decisions which counsel believes the court overlooked in the initial decision or order."  D. Conn. Loc. Civ. R. 7(c).

III.   **Discussion**

The Defendant argues that the Preliminary Injunction Order (the "Order") must be amended to correct a clear error and prevent manifest injustice as the Order, it alleges, is not sufficiently narrowly tailored to the violation at issue, and it contradicts other statutory obligations.  [Dkt. 84, Rule 59(e) Motion to Alter and Amend and Local Rule 7(c) Motion for Reconsideration].

1.  **Narrowly Tailored**

First, the Defendant argues that the preliminary injunction is not sufficiently narrowly tailored to the violation and imposes undue burdens on legal or discretionary activity.  [Dkt. 84-1, Memorandum of Law in Support of Defendant's Rule 59(e) Motion to Alter and Amend and Local Rule 7(c) Motion for Reconsideration, p. 3-6].  The Plaintiff argues that the Order is tied closely to the violation that is occurring.  [Dkt. 88, Plaintiffs' Opposition to Defendant's Motion to Alter and Amend and Motion for Reconsideration, p. 10-15].

"Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies."  *Swann v. Charlotte-Mechlenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971); *Forschner Grp., Inc. v. Arrow Trading Co.*, 124

**3**

F.3d 402, 406 (2d Cir. 1997) ("A district court has a wide range of discretion in framing an injunction in terms it deems reasonable to prevent wrongful conduct.") (citations and internal quotation marks omitted)).  Even so, "[i]njunctive relief should be narrowly tailored to fit specific legal violations . . . [and] should not impose unnecessary burdens on lawful activity."  *Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994) (citations and internal quotation marks omitted).  Accordingly, the "scope of injunctive relief is dictated by the extent of the violation established."  *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

The Defendant argues that the injunction ordered in this case is not sufficiently narrowly tailored to the violation found because it infringes on the state government's discretionary authority and, as will be discussed in the next section, creates rights for individuals not protected by the statute.  [Dkt. 84-1, p. 3-6].  However, where systemic violations in complying with federal benefit statutes are found, courts have consistently ordered injunctions requiring complete compliance with the deadlines imposed by the statute and requiring the state to develop measures that would adequately track and report its compliance.  *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 271-90 (2d Cir. 2003) (affirming a preliminary injunction that required the defendant to comply with legally-mandated time frames for the delivery of benefits and services and to develop procedural reforms designed to provide clear recordkeeping when evidence of systemic failures to comply with federal law for timely processing and providing benefits to people with HIV or AIDS was found).

For example, in *Hess v. Hughes*, the district court found that Maryland's Department of Human Resources, the agency in charge of executing the federal food stamp program in effect at the time, was failing to determine eligibility to participate in the program and providing benefits to eligible households within the statutorily prescribed time frames.  *Hess v. Hughes*, 500 F. Supp. 1054, 1058-61 (D. Md. 1980).  In granting the injunction, the court noted that the "obvious deleterious effect to the plaintiffs—the lack of food," substantially outweighs any administrative hardship created by the order.  *Id.* at 1059.  Recognizing that compliance with the statute was mandatory, the defendants were

> enjoined from failing to comply with the requirements of the federal Food Stamp regulations (1) as to the screening of Food Stamp applicants to identify those eligible for expedited service, (2) as to the provision of Food Stamps within three working days to those applicants determined eligible for expedited service, and (3) as to the provision of Food Stamps within 30 days to those applicants eligible for ordinary participation in the Food Stamp program.

*Id.* at 1063.  In short, this injunction required the defendants to do what they are statutorily obligated to do.  The Order issued by this Court has the same effect on the Defendant here.

More recently, in *Reynolds v. Giuliani*, the court granted the plaintiffs' request for an injunction requiring the defendants to "process all applications for food stamps, Medicaid, and cash assistance including applications for expedited food stamps and temporary pre-investigation grants, within the time-frames required by law" and enjoining the defendants "from converting any additional income support centers into job centers until the City makes a host of

5

institutional reforms concerning how the City implements these programs."
*Reynolds v. Giuliani*, 35 F. Supp. 2d 331, 339 (S.D.N.Y. 1999).  The court found that
the evidence presented was indicative of systemic violations of failure to process
timely applicants whose urgent needs were being overlooked.  *Id.* at 347.  The
injunction, therefore, created several obligations, including that the "City
defendants are directed to process all applications for expedited food stamps and
temporary pre-investigation grants at Job Centers within the time frames required
by law;" the "City defendants are directed to make eligibility determinations
regarding food stamps and Medicaid applications at Job Centers separate from
the eligibility determinations regarding cash assistance applications;" the "City
defendants are directed to send plaintiffs and all persons applying for food
stamps, Medicaid and cash assistance, including expedited food stamps and
temporary pre-investigation grants at Job Centers, timely and adequate written
notice of determinations of their eligibility for all benefits which they seek;" and
the "City defendants are preliminarily enjoined from converting any Income
Support Centers to Job Centers or opening any new Job Centers pending a
hearing and determination on the adequacy of a corrective plan of training and
procedures" for all centers.  *Id.* at 347-48.  It further required the development of a
corrective plan to address the systemic failures and dictated the elements to be
addressed in that plan.  *Id.*  at 348.

The injunction issued in those cases provides for the same type of relief
issued by this Court in the Order.  Both of the injunctions discussed required the
defendants to comply with the deadlines established by federal law and required

**6**

the implementation of specific monitoring controls and corrective plans.  These injunctions were ordered after a finding of systemic violations in which the plaintiffs' needs for essential benefits were being delayed because of state administrative incompetency, in clear violation of the implementing federal law.  Here, the Order states that the Court found, and the Defendant admitted, that there are "systemic deficiencies in the manner in which it processes food stamps, including without limitation routine loss of applications, loss of verification documentation, and the failure to timely schedule interviews as required by the" FSA.  [Dkt. 83, Preliminary Injunction Order, p. 1-2].  Therefore, the Court mandated that the Defendant comply with the deadlines imposed by the statute with respect to determining eligibility and providing benefits and required the implementation of monitoring controls and an informal review process.  When compared to the terms of other injunctions, the imposition is no greater than those ordered by other courts in similar situations.

The Defendant relies on *Rizzo v. Goode* as support for its position.  There, the Supreme Court held that the district court improperly "injected itself by injunctive decree into the internal disciplinary affairs of the state agency" in ordering the municipal police department to "draft, for the court's approval, 'a comprehensive program for dealing adequately with civilian complaints', to be formulated along . . . 'guidelines' suggested by the court."  *Rizzo v. Goode*, 423 U.S. 362, 369, 380 (1976).  At issue in that case was the Philadelphia Police Department's procedures for "handling citizen complaints alleging police misconduct."  *Id.* at 366.  The injunction "significantly revis[ed] the internal

**7**

procedures of the Philadelphia police department, [and] was indisputably a sharp limitation on the department's 'latitude in the dispatch of its own internal affairs.'" *Id.* at 379.  Unlike in this case, however, the Supreme Court expressed serious doubt as to whether there was a right that was being violated, the extent of the violation, and whether the plaintiffs even had standing to assert such a claim.  Indeed, the Supreme Court noted that "there was no showing that the behavior of the Philadelphia police was different in kind or degree from that which exists elsewhere," and the district court even emphasized that "respondents had no constitutional right to improved police procedures for handling civilian complaints.  But given that violations of constitutional rights of citizens occur in 'unacceptably' high numbers, and are likely to continue to occur, the court-mandated revision was a 'necessary first step' in attempting to prevent future abuses." *Id.* at 370, 375.  *Rizzo* is inapposite and Defendant's reliance on it in this matter is misplaced.

Unlike in *Rizzo*, in this case the Plaintiffs do have a clearly established right to sustenance, which the Order directs the State to respect and honor.  The regulations at issue, "which provide a deadline that specifically includes grants *and denials* of benefits, define the federal right that is at issue here: the right to a timely decision, regardless of eligibility" on an application for food stamps. *Robidoux v. Kitchel*, 876 F. Supp. 575, 579 (D. Vt. 1995) (emphasis in the original). The state is "free not to participate in the 'scheme of cooperative federalism' established under the Food Stamp . . . Act[], but if it decides to join, 'it must comply with federal requirements'" in the act to continue receiving federal funds.

*Reynolds v. Giuliani*, 506 F.3d 183, 201-02 (2d Cir. 2007) (quoting *Rothstein v. Wyman*, 467 F.2d 226, 232 (2d Cir. 1972)).  This is not a case like *Rizzo*, where the court was imposing upon the State agency its idea of how best to manage itself; it is the Court telling the Defendant that its systemic failures in complying with a benefits statute enacted by Congress are unacceptable.  In this circumstance, courts have routinely created identical obligations imposed by this Court's Order and enjoined the acting agencies from violating federal law.  Accordingly, this Court finds that the Order is sufficiently and narrowly tied to the systemic violations of timely processing applications as required by the FSA.  The Motion to Reconsider and/or to Amend and Alter the Order on this ground is DENIED.

### 2.  Contradiction of Statutory Obligations

The Defendant argues that the Order must be altered because it conflicts with the current obligations created by the statute.  Specifically, the Defendant argues that (1) it should only be required to provide benefits retroactively if the household is determined to be eligible to receive benefits; (2) eligibility must be a factor in the Order requiring prompt application processing; and (3) prompt processing of applications must only occur if the application process is timely completed.  [Dkt. 89, Defendant's Reply Memorandum In Support of Defendant's Rule 59(e) Motion to Alter and Amend and Local Rule 7(c) Motion for Reconsideration, p. 2-9].

a.  **Retroactive Payment of Benefits**

The Defendant argues that benefits must be restored retroactively to the month of application only if the household is determined to be eligible for assistance, and the fault for the delay is attributable to the State agency.  [*Id.* at 9].  The Defendant takes issue with the following language in the Order: "7. Defendant shall process all applications for food stamps and provide food stamp benefits retroactive to the month of application to those households that have completed the application process and been determined eligible as required by 7 U.S.C. §§2020(e)(3) and (e)(9); 7 C.F.R. §273.2," and "10. In each case in which Defendant is at fault for failing to make a timely eligibility determination, Defendant shall restore the household benefits retroactive as prescribed by 7 C.F.R. § 273.17."  The Court agrees with the Defendant that the regulations only require a payment of retroactive benefits to eligible households when it is found that the State agency was at fault for the delay.  *See* 7 C.F.R. § 273.2(h).  Nothing in the Order is meant to require nor does it require the State to do otherwise.  The uncontested issue here is that the state has long been derelict in its duty to make eligibility determinations timely and to maintain adequate records of applicant submissions made to establish eligibility.

Since the Defendant has raised concerns about possible misinterpretations of the Order, the Court GRANTS the motion to amend on this issue.  Paragraph 10 of the Order is amended to state: "In each case in which Defendant is at fault for failing to make a timely eligibility determination, Defendant shall restore the household benefits retroactive as prescribed by 7 C.F.R. § 273.17(d)(ii) and

**10**

273.2(h)."  The reference to § 273.17 in Paragraph 6 is also amended to "§ 273.17(d)(ii)."  Since Paragraph 7 currently references the same regulation section, it remains unaltered.  The Court also adds the following: "15. This order is not intended to and shall not be construed to require the state to pay benefits to applicants it demonstrates to be ineligible, including by virtue of an untimely application."

### b.  Eligibility and Timeliness in Application Processing

The Defendant's second and third points it wishes to amend address the same concern: the duty to process applications for ineligible applicants or those that are not timely completed.  The Defendant argues that the Order improperly provides relief for households whose individual rights were not violated because they either are not eligible for assistance or because they did not fulfill their obligation to timely complete the application process.  [Dkt. 89, p. 2-3].  The Defendant argues that the following paragraphs in the Order should be amended: "11. Defendant shall provide eligible households that complete the initial application process (including combined applications for food stamps, cash assistance, or other federal benefits) an opportunity to participate in the food stamp program as soon as possible, but no later than thirty calendar days following the date the application was filed . . . ," and "14. Within twelve (12) months of this Order, Defendant shall be in full compliance with all federal requirements to promptly determine the eligibility for food stamps of each applicant household so as to complete certification and provide assistance to all eligible households."  The Defendant argues that the word "timely" should be

**11**

added to both of these provisions to ensure that it must only process

applications that are timely submitted.  It also argues that the remainder of

paragraph 14 should be amended to ensure that entitlement to prompt application

processing is limited "only to eligible households;" accordingly, the paragraphs

related to overall compliance must make an exception for households that fail "to

comply with their responsibilities to timely complete the application process."

[Dkt.84-1, p. 15-16].  The Defendant's reading of the Order and its obligations

under the statute and regulations are incorrect.

Chapter 7 U.S.C. § 2020(e)(3) provides that

> the State agency shall thereafter promptly determine the
> eligibility of each applicant household by way of
> verification of income other than that determined to be
> excluded . . . so as to complete certification of and
> provide an allotment retroactive to the period of
> application to any eligible household not later than thirty
> days following its filing of an application, and that the
> State agency shall provide each applicant household, at
> the time of application, a clear written statement
> explaining what acts the household must perform to
> cooperate in obtaining verification and otherwise
> completing the application process.

From the language of the statute, it is clear that the State agency has obligations

and responsibilities that commence the moment the application is filed.  The

regulations clarify that the

> State agency shall provide eligible households that
> complete the initial application process an opportunity
> to participate . . . as soon as possible, but no later than
> 30 calendar days following the date the application was
> filed . . . . An application is filed the day the appropriate
> food stamp office receives an application containing the
> applicant's name and address, which is signed by either

> a responsible member of the household or the
> household's authorized representative.

7 C.F.R. § 273.2(g)(1).  To file an application, therefore, it is not required that the interview be completed or that the entire application process be finished; instead, the application is filed when the State agency receives the signed application containing the name and address of the applicant.  It is from this date that the state has 30 days to provide eligible households that complete the application process benefits.

Even though the Defendant admits it has a duty to eligible households, it also has obligations and responsibilities to those households that are ineligible or fail to timely complete the application process.

> Households that are found to be ineligible shall be sent
> a notice of denial as soon as possible but not later than
> 30 days following the date the application was filed.  If
> the household has failed to appear for a scheduled
> interview and has made no subsequent contact with the
> State agency to express interest in pursuing the
> application, the State agency shall send the household a
> notice of denial on the 30th day following the date of
> application.

7 C.F.R. § 273.2(g)(2).  While the Defendant is correct that certain regulations require the Defendant to keep an application longer than 30 days, it is clear that the State agency has responsibilities and obligations to assist the applicant in completing the process.  This assistance requires the state's prompt action to process and review the application and determine what other steps or other evidence are needed for the application process to be completed.

The Defendant argues that Paragraphs 11 and 14 of the Preliminary Injunction Order currently require it to perform certain actions that are not required by the statute and regulations.  First, it argues that the word timely must be added to Paragraph 11, so that the paragraph will read: "Defendant shall provide eligible households that timely complete the initial application process . . . an opportunity to participate in the food stamp program as soon as possible, but no later than thirty calendar days following the date the application was filed by 7 U.S.C. §2020(e)(3); 7 C.F.R. §273.2(g)."  [Dkt. 84-1, p. 14].  The Defendant argues that this modification is necessary to "clarify that the defendant's administrative obligation to timely process does not extend to situations where the household delays in completing the application process."  [*Id.*].  Inexplicably, the Defendant makes this argument even though the language in the Order is a direct quote from the regulations.  *See* 7 C.F.R. § 273.2(g)(1).  Therefore, adding the word "timely" will ultimately change what the regulations actually require, instead of correcting what the Defendant claims is an added obligation.  As the Defendant correctly points out, this Court does not have the ability to change the obligations that are statutorily imposed; it only has the ability to ensure that the Defendant complies with the statutory requirements.  Therefore, adding the word "timely" is inappropriate in light of the regulations.

Pursuant to the regulations and, therefore, the Order, the State is only required to provide to eligible households that complete the initial application process an opportunity to participate in the program.  By definition the applicant is required to complete the application process to receive the benefits.  The Court

is unsure as to what the Defendant hopes to achieve by adding the word "timely"

as it seems to be encompassed already by the language in the Order.

Moreover, the regulations require the state to issue a Notice of Denial to

ineligible applicants and to those who fail to appear at their scheduled interview

or show no further interest in the application process.    After recipient of the

applications and the supporting documentation required to apply for food

stamps, the state has both the obligation and the ability to determine who is and

who is not eligible.  The Order imposes no obligations on the state to which it is

not already subject.

The Defendant also requests adding the words "eligible" and "timely" in

Paragraph 14 of the Order to ensure that it only needs to process applications for

those households that are both eligible for assistance and timely complete the

application process.  [Dkt. 84-1, p. 15-16].  The Defendant argues that this is

appropriate because the statute only requires that it process applications timely

and provide benefits to eligible households, not ineligible ones.  The Defendant

appears to be confused of the definition of "processing applications" because it

interprets that term as used in the Order to require the ultimate determination of

eligibility.  However, the regulations provide that

> [t]he application process includes filing and completing
> an application form, being interviewed, and having
> certain information verified.  The State agency must act
> promptly on all applications and provide food stamp
> benefits retroactive to the month of application to those
> households that have completed the application
> process and have been determined eligible.  The State

agency must make expedited service available to
households in immediate need.

7 C.F.R. § 273.2(a)(2).  Clearly, the State agency has an obligation to "act

promptly" in processing all applications, even for households who ultimately are

determined to be ineligible.  Process, therefore, does not mean determining

eligibility, rather it requires the state to review the application and take additional

steps as specified in the regulations.  This reading of the regulations is confirmed

by the statutory language which states that the "State agency shall provide each

applicant household, at the time of application, a clear written statement

explaining what acts the household must perform to cooperate in obtaining

verification and otherwise completing the application process."  7 U.S.C. §

2020(e)(3).  The notice that is provided "shall also inform the household of the

State agency's responsibility to assist the household in obtaining required

verification provided the household is cooperating with the State agency . . . ."  7

C.F.R. § 273.2(c)(5).  Therefore, the terms of the Order are consistent with the

understanding that the State agency is required to act promptly on all

applications by processing them in the sense that the State agency reviews the

information submitted and assists the applicant in timely completing the process.

This is all the Order requires.

In addition to the fact that the terms of the Order mirror the obligations

created by the statute and the regulations, it is worth noting that another court in

this Circuit has also held that the regulations, "which provide a deadline that

specifically includes grants *and denials* of benefits, define the federal right that is

at issue here: the right to a timely decision, regardless of eligibility."  *Robidoux*,

876 F. Supp. at 579 (citing 7 C.F.R. § 273.2(g)) (emphasis in the original).  The court held that this must be the case because "[i]n establishing a processing deadline for all applications, the federal government recognized the interest of all applicants in a timely decision.  Individuals deemed eligible for benefits need assistance quickly.  Those who are found to be ineligible need to seek alternative resources, and potentially pursue an appeal, as soon as possible."  *Id.* at 580. This analysis is persuasive and confirms this Court's understanding that the statute and the regulations require the state agency to act the moment an application is filed.  The state has the responsibility to assist the applicant in timely completing the process and to determine quickly the applicant's eligibility. Given this, the Order is not overly broad and does not require the Defendant to perform any functions not otherwise prescribed in the statute.  Furthermore, the Order is not intended to and shall not be read to require the Defendant to perform any functions not found in the statute or the regulations.  Since the Defendant has failed to show that the Court has erred in issuing the Order as related to its processing obligations or created a manifest injustice, the motion is DENIED on these bases.

IV.   <u>Conclusion</u>

The Defendant's motion to amend and alter or motion to reconsider is GRANTED IN PART and DENIED IN PART.  The Order is amended as explained in Section III(2)(a), and the Defendant's motion is denied in all other respects.

**IT IS SO ORDERED.**

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: March 24, 2014